—MH

**FILED**

5-28-2008

MAY 2 8 2008

**WAYNE R. ANDERSEN**
**U. S. DISTRICT COURT JUDGE**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA           )
                                   )
                vs.                )        No. 07 CR 859
                                   )        Judge Wayne R. Andersen
MICHAEL LASHAWN HAYWOOD            )
                                   )

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MICHAEL LASHAWN HAYWOOD, and his attorney, JOHN F. MURPHY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with distribution of in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 1-2)

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with distributing in excess of 50 grams of

cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On December 17, 2003, at Rockford, in the Northern District of Illinois, defendant MICHAEL LASHAWN HAYWOOD ("HAYWOOD") knowingly and intentionally distributed a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine ("crack cocaine") to an individual who, unbeknownst to HAYWOOD, was cooperating with the government ("CI"). More specifically, on December 17, 2003, the CI purchased approximately two and one-quarter ounces of crack cocaine from HAYWOOD. Before that transaction, the CI spoke with HAYWOOD over the telephone, and HAYWOOD instructed the CI to meet him (HAYWOOD) at a gas station located on State Street in Rockford, Illinois. After the conversation, the CI went to meet with HAYWOOD.

At approximately 7:00 p.m. that night, HAYWOOD and the CI met in the parking lot of a Waylow gas station on State Street in Rockford. HAYWOOD arrived at that gas station in a Silver Chrysler automobile, Illinois license plate #5602573, and after parking his Chrysler, HAYWOOD entered the CI's car. Inside the CI's car, HAYWOOD provided the CI with a bag containing approximately 62.6 grams of crack cocaine. In exchange, the CI provided HAYWOOD with $1,500, which the CI counted out for HAYWOOD.

2

During the meeting, the CI asked about buying more drugs from HAYWOOD, asking what was the "price of four and a half," referring to the price for four and one-half ounces of crack cocaine. HAYWOOD responded that he would sell the CI four and one-half ounces of crack cocaine for "23," meaning $2,300. The CI responded that he would call HAYWOOD in two or three days. After a few minutes, HAYWOOD exited the CI's vehicle, returned to his Chrysler, and drove away.

7.     Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

a.     On January 13, 2004, at Rockford, in the Northern District of Illinois, HAYWOOD knowingly and intentionally distributed a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine to the CI. On that day, the CI called HAYWOOD to make arrangements for the expected drug transaction. After that call, the CI drove to the area of Cavanaugh and Central streets in Rockford in order to meet with HAYWOOD.

At approximately 5:00 p.m., the CI initially met with HAYWOOD in a McDonalds parking lot located at Cavanaugh and Central Streets in Rockford. After this meeting, HAYWOOD drove to another location nearby in his Chrysler, followed by the CI. HAYWOOD and the CI met up again at a Gray's food store parking lot located at 3214 Auburn in Rockford. At this location, the CI entered HAYWOOD's Chrysler, where HAYWOOD provided the CI with a bag containing approximately 123.3 grams of crack cocaine. In exchange for the crack cocaine, the CI provided HAYWOOD with $3,500, which the CI counted out for HAYWOOD.

3

b.    During 2003 to June of 2004, HAYWOOD received powder cocaine from an individual nicknamed "Shadow."    In approximately 2003, HAYWOOD started getting marijuana from Shadow through Individual A, in approximately one pound amounts. Shadow fronted the marijuana to HAYWOOD meaning HAYWOOD would pay Shadow for the marijuana after HAYWOOD sold the marijuana and had the money to pay Shadow. HAYWOOD gave Individual A the marijuana purchase money to give to Shadow that he (HAYWOOD) owed Shadow.

During 2003, HAYWOOD asked Individual A and Shadow if they had any cocaine, which they did. Over time, HAYWOOD began receiving larger amounts of cocaine from Shadow. After a couple of months of receiving ounce quantities of cocaine from Individual A and later from Shadow, HAYWOOD began receiving kilogram amounts of cocaine from Shadow every week or week and a half. During approximately a six to nine month period ending in June, 2004, HAYWOOD received kilogram quantities of powder cocaine from Shadow. Typically, Shadow fronted this cocaine to HAYWOOD. HAYWOOD acknowledges that he received approximately 25 kilograms of powder cocaine from Shadow during their drug relationship.

8.    The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

9.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

4

a.      A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $4,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

10.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      The base offense level for the charge in Count One of the indictment is 34, pursuant to Guideline §§1B1.3, 2D1.1(a)(3), and 2D1.1(c)(3). The amount of cocaine base in the form of crack cocaine (approximately 185.9 grams) and powder cocaine (approximately 25

5

kilograms) involved in the offense of conviction and relevant conduct is equal to approximately 6,245 kilograms of marijuana under the drug equivalency tables in the commentary of Guideline §2D1.1. Defendant is therefore responsible for at least 3,000 but less than 10,000 kilograms of marijuana under Guideline §2D1.1(c)(3), which provides for a base offense level of 34. However the position of the government is that the defendant is a career offender under Guideline § 4B1.1 and that therefore the base offense level is level 37.

        ii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and

6

stipulated below, defendant's criminal history points equal 14 and defendant's criminal history category is VI:

        i.      On or about July 19, 1990, defendant was convicted of burglary of a motor vehicle in Kane County Circuit Court, and sentenced to a 3 year term of imprisonment in case number 90 CF 330.  Pursuant to Guideline § 4A1.1(a) three criminal history points are added.

        ii.      On or about  April 16, 1992, defendant was convicted of criminal trespass to state land in Kane County Circuit Court, and sentenced to a one year term of conditional discharge on case number 92 CM 1264. Pursuant to Guideline § 4A1.2(e) no criminal history points are added.

        iii.      On or about November 30, 1992, defendant was convicted of attempt unlawful of a controlled substance, < 1 gram of cocaine, in Kane County Circuit Court, and sentenced to a term of probation of 30 months in case number 91 CF 1912.  Pursuant to Guideline § 4A1.2(e) (3) no criminal history points are added.

        iv.      On or about September 22, 1997, defendant was convicted of possession with intent to deliver 100<400 grams of cocaine in Kane County Circuit Court, and sentenced to a 10 year term of imprisonment in case number 95 CF 269.  Pursuant to Guideline § 4A1.1(a) three criminal history points are added.

        v.      On or about July 31, 1998, defendant was convicted of drug conspiracy in McHenry County Circuit Court, and sentenced to 5 year term of imprisonment in case number 97 CF 974.  Pursuant to Guideline § 4A1.1(a) three criminal history points are added.

        vi.      On  or  about  July  31,  1998,  defendant  was  convicted manufacture/delivery of 100<400 grams of cocaine in McHenry  County Circuit Court, and

sentenced to 5 year term of imprisonment in case number 97 CF 975. Pursuant to Guideline §
4A1.2(a)(2) no criminal history points are added.

        vii.     On or about December 4, 2003, defendant was convicted of possession
of < 2.5 grams of cannabis in Winnebago County Circuit Court, and sentenced to a one year term
of conditional discharge on case number 03 CM 6342. Pursuant to Guideline § 4A1.1(c) one
criminal history point is added.

        viii.    On or about December 4, 2003, defendant was convicted of
criminal damage to property < $300 in Winnebago County Circuit Court, and sentenced to a one year
term of conditional discharge on case number 03 CM 8104. Pursuant to Guideline § 4A1.2(a)(2) no
criminal history points are added.

        ix.     On or about December 14, 2006, defendant was convicted of
obstruction of justice in Winnebago County Circuit Court, and sentenced to a 180 day term of
imprisonment and a 30 month term of probation on case number 05 CF 3849. Pursuant to Guideline
§ 4A1.1(b) two criminal history points are added.

        x.     The defendant committed the instant offense while under a
criminal justice sentence, namely, a term of correctional supervision for the conviction described in
paragraph vii. above. Pursuant to Guideline § 4A1.1(d) two criminal history points are added.

        xi.     The position of the government is that based upon the
convictions set forth in subparagraphs iv., v. and vi. above, defendant is a career offender pursuant
to Guideline § 4B1.1 because he has at least two prior felony convictions for controlled substance
offenses. Accordingly, the defendant's criminal history category is VI and the defendant's offense
level is 37.

8

d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 34, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 262 to 327 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.    Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not

have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

12.     Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement.

## Agreements Relating to Sentencing

13.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

14.     If the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and 18 U.S.C. § 3553(e), as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end

10

of the applicable guidelines range or 50 percent of the statutory minimum sentence of 120 months, whichever is greater. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

15.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

16.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $5,000 as compensation for government funds that defendant received during the investigation of the case.

11

17.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

19.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

20.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

12

21.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

22.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 859.

23.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

13

24.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether

14

or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

     v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

     vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

     vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

     b.  **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence,

15

and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

        c.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this

16

Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _5/23/08_

PATRICK J. FITZGERALD
United States Attorney

MICHAEL LASHAWN HAYWOOD
Defendant

MICHAEL O. LANG
Assistant U.S. Attorney

JOHN F. MURPHY
Attorney for Defendant

17